**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. <u>15-20473-CR-UNGARO(s)</u>**
**18 U.S.C. § 371**
**18 U.S.C. § 981(a)(1)(C)**

**UNITED STATES OF AMERICA**

**v.**

**MATTHEW GREER,**
**LLOYD BOGGIO,**
**MICHAEL RUNYAN,**
**GONZALO DERAMON,**
**MICHAEL COX, and**
**RENE SIERRA,**

        **Defendants.**
_____/

**<u>SUPERSEDING INFORMATION</u>**

The United States Attorney charges that:

**<u>GENERAL ALLEGATIONS</u>**

At all times relevant to this Superseding Information:

**<u>The Federal Low-Income Housing Tax Credit and Grant Program</u>**

1.     The United States Government funded the construction of affordable housing for low-income Americans through the award of federal tax credits and federal grant monies to developers.

2.     The Tax Reform Act of 1986 authorized state housing agencies to issue federal tax credits to developers for the construction of low-income housing. These tax credits allowed for a dollar-for-dollar reduction of a taxpayer's annual tax liability over a period of years.

Developers typically sold these tax credits to investors to finance the construction of low-income housing developments.

3.      The American Recovery and Reinvestment Act of 2009 authorized state housing agencies to issue federal grant monies from the U.S. Department of Treasury to developers for the construction of low-income housing.  Developers used these grant monies to build the low-income housing developments.

4.      Pursuant to both programs, state housing agencies received an annual allotment of federal tax credits and grant monies for the construction of low-income housing developments. Florida Housing Finance Corporation ("FHFC"), located in Tallahassee, Florida, was the designated state housing agency that issued these tax credits and grant monies in Florida.

5.      FHFC issued federal tax credits and grant monies to developers through an annual application process.  Developers submitted applications to FHFC for the construction of proposed low-income housing developments.  FHFC selected some of the proposed developments to receive federal tax credits and grant monies through a competitive process.

6.      Once selected, FHFC required the selected developer to submit their costs to build the proposed development to FHFC's representatives.  This submission included a contract signed by the developer and contractor setting forth the actual compensation to be paid the contractor to build the low-income housing development (the "construction contract").

7.      FHFC allocated federal low-income housing tax credits and grant monies based on the developer's submitted costs, including primarily the construction contract.  Generally, a development with higher submitted costs would receive a greater allocation of tax credits and/or grant monies.

8.      For those developers receiving federal tax credits and grant monies, FHFC allowed them to receive a developers' fee of between sixteen and twenty-one percent of the development's costs and to receive rental income from the development.

### The Defendants and The Low-Income Housing Developments

#### The Developers

9.      Defendants **MATTHEW GREER** and **LLOYD BOGGIO** were, at alternating times, the chief executive officers of Carlisle Development Group ("CDG"), a low-income housing developer in Miami, Florida.  **GREER** set up an entity called Marquesas Capital, Inc. ("Marquesas").  **BOGGIO** set up an entity called Caesar and Cleopatra Investments LLLP ("Caesar and Cleopatra").

10.      Defendants **GONZALO DERAMON** and **MICHAEL COX** were the founders of Biscayne Housing Group, Inc. ("BHG"), a low-income housing developer in Miami, Florida.  **DERAMON** set up an entity called SSHH Construction, Inc. ("SSHH") that did no actual construction work.

#### The Contractors

11.      Defendant **MICHAEL RUNYAN** was the founder of BJ&K Construction, Inc. ("BJ&K"), a general contractor located in Fort Lauderdale, Florida.

12.      Defendant **RENE SIERRA** was the founder of Siltek Affordable Housing, LLC ("Siltek"), a general contractor located in Plantation, Florida.

13.      General Contractor Arturo Hevia was the founder of Design Management and Builders Corporation ("DMBC"), a general contractor located in Doral, Florida.

## The Low-Income Housing Developments Involved in the Conspiracy

14.   CDG hired BJ&K to construct the following low-income housing developments (the "BJ&K Subject Developments") in Miami-Dade County and elsewhere:

a.   **Brownsville Transit Village II**:  a 100-unit apartment complex in Brownsville (5225 NW 29th Avenue, Miami, Florida) for low-income individuals and families.

b.   **Brownsville Transit Village III**:  a 103-unit apartment complex in Brownsville (5275 NW 29th Avenue, Miami, Florida) for low-income individuals and families.

c.   **Brownsville Transit Village IV**:  a 102-unit apartment complex in Brownsville (5185 NW 29th Avenue, Miami, Florida) for low-income individuals and families.

d.   **Everett Stewart Senior Village**:  a 96-unit apartment complex in Brownsville (5255 NW 29th Avenue, Miami, Florida) for low-income individuals and families.

e.   **Metro**: a 90-unit apartment complex in Overtown (1000 NW 1st Avenue, Miami, Florida) for low-income families.

f.   **Poinciana Grove**: an 80-unit apartment complex in Little Haiti (5601 NW 2nd Avenue, Miami, Florida) for low-income elderly individuals.

g.   **Wahneta Palms**:  a 64-unit apartment complex in Polk County (225 2nd Wahneta Street E, Winter Haven, Florida) for low-income families.

h.   **Villa Patricia III**:  an 89-unit apartment complex in Little Haiti (7815 NE 2nd

Avenue, Miami, Florida) for low-income individuals and families.

15.     BHG and CDG had a joint venture to construct the following low-income housing developments with Siltek (the "Siltek/BHG/CDG Subject Developments") in Miami-Dade County:

    a.    **Labre Place ("Labre")**: a 90-unit apartment complex in Overtown (350 NW 4th Street, Miami, Florida) for formerly homeless and low-income individuals and families.

    b.    **Village Carver II**: a 90-unit apartment complex in Little Haiti (401 NW 71st Street, Miami, Florida) for low-income elderly residents.

16.     BHG hired Siltek to construct the following low-income housing developments (the "Siltek/BHG Subject Developments," and together with the "Siltek/BHG/CDG Subject Developments," the "Siltek Subject Developments") in Miami-Dade County:

    a.    **Bonita Cove**: a 60-unit apartment complex in Little Haiti (5705 NW 2nd Avenue, Miami, Florida) for low-income families.

    b.    **Notre Dame**: a 64-unit apartment complex in Little Haiti (5725 NW 2nd Avenue, Miami, Florida) for low-income families.

17.     BHG hired DMBC to construct the following low-income housing developments (the "DMBC Subject Developments") in Miami-Dade County:

    a.    **Casa Matias**: an 80-unit apartment complex in Homestead (14340 SW 260th Street, Naranja, Florida) for low-income and homeless individuals and families.

    b.    **Georgia Ayers**: a 72-unit apartment complex in Opa-Locka (13280 Port Said Road, Opa Locka, Florida) for low-income families.

## COUNT 1
### Conspiracy to Commit Theft of Government Money and Property
### (18 U.S.C. § 371)

1.     Paragraphs 1 through 9, 11, and 14 of the General Allegations section of this Superseding Information are realleged and incorporated herein.

2.     From in or around 2007, through in or around 2012, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**MATTHEW GREER,**
**LLOYD BOGGIO, and**
**MICHAEL RUNYAN,**

did knowingly and willfully, that is, with the intent to further the purpose of the conspiracy, combine, conspire, confederate, and agree with each other, and others known and unknown to the United States Attorney, to commit an offense against the United States, that is, to knowingly and willfully embezzle, steal, purloin, and convert to his own use and gain, a thing of value of the United States and of a department and agency thereof, the aggregate amount of which exceeded $1,000.00, that is, Internal Revenue Code Section 42 federal tax credits and United States Department of Treasury grant monies, to which they were not entitled, in violation of Title 18, United States Code, Section 641.

### PURPOSE OF THE CONSPIRACY

3.     It was the purpose of the conspiracy for **MATTHEW GREER, LLOYD BOGGIO, MICHAEL RUNYAN,** and their co-conspirators to unjustly enrich themselves by submitting fraudulently inflated low-income housing construction contracts to FHFC's representatives to obtain excess federal tax credits and grant monies to which they were not entitled, and then to use the proceeds for their personal use and benefit.

6

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which **MATTHEW GREER, LLOYD BOGGIO,**

**MICHAEL RUNYAN,** and their co-conspirators sought to accomplish the purpose and object

of the conspiracy included, among others, the following:

4.    CDG submitted applications to FHFC to build several housing projects for low-

income and homeless individuals. FHFC selected some of these projects, including the BJ&K

Subject Developments, as eligible for receipt of federal tax credits and/or grant monies.

5.    Once selected as eligible to receive federal tax credits and/or grant monies,

**MATTHEW GREER** and **LLOYD BOGGIO** directed CDG employees to solicit final

construction bids for the BJ&K Subject Developments from BJ&K reflecting the total

compensation that BJ&K would receive to build each development.

6.    CDG employees received a final construction bid from BJ&K's employees or

estimated BJ&K's final construction bid for each BJ&K Subject Development. **MATTHEW**

**GREER** and **LLOYD BOGGIO** then directed CDG's employees to provide BJ&K with an

inflated contract price for the construction contract for each BJ&K Subject Development, which

would be submitted to FHFC's representatives.

7.    **MATTHEW GREER, LLOYD BOGGIO,** and **MICHAEL RUNYAN** had an

unwritten agreement that BJ&K would receive the inflated price listed in the construction

contracts, but BJ&K would keep only their final construction bid amount and would kick back

the remaining inflated amount in the contracts to **GREER** and **BOGGIO.**

8.    **MICHAEL RUNYAN** and either **MATTHEW GREER** or **LLOYD BOGGIO**

signed construction contracts with the fraudulently inflated prices for each BJ&K Subject

Development and submitted these contracts to FHFC's representatives. These construction contracts falsely represented the actual amount of compensation that BJ&K would receive to build the BJ&K Subject Developments. FHFC's representatives relied on these fraudulent contracts in determining the amount of federal tax credits and grant monies to issue.

9.     FHFC allocated federal tax credits and grant monies for the BJ&K Subject Developments based on CDG's submitted costs. The inflated amounts in the contracts caused FHFC to allocate excessive federal tax credits and grant monies.

10.     CDG built the BJ&K Subject Developments primarily using federal grant monies and monies from the sale of the federal tax credits. During construction, CDG distributed monies to BJ&K's bank accounts totaling the full amount set forth in the inflated construction contract for each BJ&K Subject Development. In this way, **MATTHEW GREER** and **LLOYD BOGGIO** made it appear to FHFC and others that the inflated contract price was the construction cost for each of the BJ&K Subject Developments, when in fact, it was not.

11.     As funds were deposited in BJ&K's bank accounts, **MICHAEL RUNYAN** tracked and retained the excess funds received from the inflated contracts. **MICHAEL RUNYAN** kicked back these excess funds by wiring payments to bank accounts for the benefit of **MATTHEW GREER** and **LLOYD BOGGIO**.

12.     As a result of the inflated contracts, FHFC allocated at least $26 million in excess federal tax credits and grant monies for the BJ&K Subject Developments. During the course of the scheme, **MICHAEL RUNYAN** kicked back at least $26 million for the benefit of **MATTHEW GREER** and **LLOYD BOGGIO**.

13.     These kickback payments were in addition to tens of millions of dollars in FHFC-

8

authorized developers' fees that CDG was already receiving as compensation for the BJ&K Subject Developments.

## OVERT ACTS

In furtherance of the conspiracy and to achieve the object and purpose thereof, at least one of the co-conspirators committed or caused to be committed in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1.     On or about October 10, 2007, a BJ&K employee sent an e-mail to a CDG employee indicating BJ&K's final construction bid of approximately $12.7 million for the construction of Poinciana Grove.

2.     On or about December 10, 2007, **LLOYD BOGGIO** and **MICHAEL RUNYAN** signed the Poinciana Grove construction contract with a fraudulently inflated construction price of approximately $14.8 million, which concealed approximately $2.1 million in intended kickback payments.

3.     On or about October 29, 2008, FHFC's representatives recommended an allocation of $20.2 million in federal tax credits to cover construction costs and other development costs for Poinciana Grove, which included at least $2.1 million in excess credits as a result of the fraudulently inflated construction contract.

4.     On or about December 16, 2008, **MICHAEL RUNYAN** wired a kickback payment of approximately $1,386,893 to a Marquesas trust account for the benefit of **MATTHEW GREER** and **LLOYD BOGGIO**.

5.     On or about September 14, 2009, a BJ&K employee sent an e-mail to a CDG employee indicating BJ&K's final construction bid of approximately $14.1 million for the

9

construction of Metro.

6.     On or about October 22, 2009, **MATTHEW GREER** and **MICHAEL RUNYAN** signed the Metro construction contract with a fraudulently inflated construction price of approximately $16.8 million, which concealed approximately $2.7 million of intended kickback payments.

7.     On or about March 10, 2010, FHFC's representatives recommended an allocation of over $20.6 million in federal grant monies to cover construction costs and other development costs for Metro, which included at least $2.7 million in excess grant monies as a result of the fraudulently inflated construction contract.

8.     On or about March 23, 2011, **MICHAEL RUNYAN** wired a kickback payment of approximately $8,723,291 to the Caesar and Cleopatra investment account for the benefit of **MATTHEW GREER** and **LLOYD BOGGIO**.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
### Conspiracy to Commit Theft of Government Money and Property
### (18 U.S.C. § 371)

1.     Paragraphs 1 through 10, 12, 15, and 16 of the General Allegations section of this Superseding Information are realleged and incorporated herein.

2.     From in or around 2009, through in or around 2012, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**GONZALO DERAMON,**
**MICHAEL COX,**
**MATTHEW GREER,**
**LLOYD BOGGIO, and**
**RENE SIERRA,**

10

did knowingly and willfully, that is, with the intent to further the purpose of the conspiracy, combine, conspire, confederate, and agree with each other, and others known and unknown to the United States Attorney, to commit an offense against the United States, that is, to knowingly and willfully embezzle, steal, purloin, and convert to his own use and gain, a thing of value of the United States and of a department and agency thereof, the aggregate amount of which exceeded $1,000.00, that is, Internal Revenue Code Section 42 federal tax credits and United States Department of Treasury grant monies, to which they were not entitled, in violation of Title 18, United States Code, Section 641.

## PURPOSE OF THE CONSPIRACY

3.     It was the purpose of the conspiracy for **GONZALO DERAMON, MICHAEL COX, MATTHEW GREER, LLOYD BOGGIO, RENE SIERRA**, and their co-conspirators to unjustly enrich themselves by submitting fraudulently inflated low-income housing construction contracts to FHFC's representatives to obtain excess federal tax credits and grant monies to which they were not entitled, and then to use the proceeds for their personal use and benefit.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which **GONZALO DERAMON, MICHAEL COX, MATTHEW GREER, LLOYD BOGGIO, RENE SIERRA**, and their co-conspirators sought to accomplish the purpose and object of the conspiracy included, among others, the following:

4.     BHG submitted applications to FHFC for the construction of the Siltek/BHG Subject Developments.  CDG, in a joint venture with BHG, submitted applications to FHFC for the construction of the Siltek/BHG/CDG Subject Developments.   FHFC selected these

11

developments, the Siltek Subject Developments, as eligible for federal tax credits and/or grant monies.

5.    **GONZALO DERAMON** and **MICHAEL COX** solicited a final construction bid reflecting the total compensation Siltek would receive to build the Siltek Subject Developments.

6.    **RENE SIERRA** provided final construction bids to **GONZALO DERAMON** and **MICHAEL COX** for each Siltek Subject Development.  **DERAMON** then provided **SIERRA** with an inflated price to use in the construction contracts for each Siltek Subject Development, which would be submitted to FHFC's representatives.

7.    **GONZALO DERAMON**, **MICHAEL COX**, and **RENE SIERRA** had an agreement that Siltek would receive the inflated price listed in the construction contract for the Siltek Subject Developments, but Siltek would keep only its final construction bid amount and kick back the remaining inflated amount of the contract to **COX** and **DERAMON**.

8.    **GONZALO DERAMON**, **MICHAEL COX**, **MATTHEW GREER**, and **LLOYD BOGGIO** had a side agreement that they would share the excess funds for the Siltek/BHG/CDG Subject Developments.

9.    **GONZALO DERAMON** and **RENE SIERRA** signed construction contracts with these fraudulently inflated prices for each Siltek Subject Development and submitted these contracts to FHFC's representatives.  These construction contracts falsely represented the actual amount of compensation that Siltek would receive to build each Siltek Subject Development. FHFC's representatives relied on these fraudulent contracts in determining the amount of federal tax credits and grant monies to recommend that FHFC issue.

10. FHFC allocated federal tax credits and grant monies for the Siltek Subject Developments based on BHG's submitted costs. The inflated amounts in the contracts caused FHFC to allocate excessive federal tax credits and grant monies to BHG.

11. BHG built the Siltek Subject Developments primarily using federal grant monies and monies from the sale of the federal tax credits. During construction of the developments, BHG distributed monies to Siltek's bank accounts totaling the full amount in the fraudulently-inflated construction contracts. In this way, **GONZALO DERAMON** and **MICHAEL COX** made it appear to FHFC and others that the inflated contract price was the actual construction cost for each Siltek Subject Development, when in fact, it was not the true cost.

12. As funds were deposited in Siltek's bank accounts, **RENE SIERRA** tracked and retained the excess funds received from the fraudulently inflated contracts. **SIERRA** met with **GONZALO DERAMON** and **MICHAEL COX** during construction of the Siltek Subject Developments to review the amount of excess funds available for periodic kickbacks to the developers.

13. **GONZALO DERAMON** directed **RENE SIERRA** to kick back the excess funds by writing checks payable from Siltek to SSHH. From SSHH, monies were distributed to bank accounts and investments for the personal use and benefit of **DERAMON, MICHAEL COX, MATTHEW GREER**, and **LLOYD BOGGIO**.

14. During the course of the scheme, FHFC allocated at least $8.8 million in excess tax credits and grant monies as a result of the inflated contracts for the Siltek Subject Developments. **RENE SIERRA** kicked back approximately $6.2 million in illegal payments for the benefit of **GONZALO DERAMON, MICHAEL COX, MATTHEW GREER**, and

**LLOYD BOGGIO**.

15.     The kickback payments were in addition to millions of dollars in FHFC-authorized developers' fees that BHG was already receiving as compensation for the Siltek Subject Developments.

## OVERT ACTS

In furtherance of the conspiracy and to achieve the object and purpose thereof, at least one of the co-conspirators committed or caused to be committed in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1.     On or about September 11, 2009, **GONZALO DERAMON** and **MICHAEL COX** received an e-mail from a Siltek employee reflecting **RENE SIERRA's** final construction bid of approximately $10.9 million for the construction of Labre.

2.     On or about October 12, 2009, **GONZALO DERAMON** and **RENE SIERRA** signed the Labre construction contract with a fraudulently inflated construction price of approximately $12.8 million, which concealed approximately $1.9 million of intended kickback payments.

3.     On or about January 11, 2010, FHFC's representatives recommended an allocation of over $19 million in federal grant monies to cover construction costs and other development costs for Labre, which included at least $1.9 million in excess grant monies as a result of the fraudulently inflated construction contract.

4.     On or about August 5, 2011, **RENE SIERRA** wrote a check to SSHH in the amount of $1,000,000 that included a kickback payment for Labre and other Siltek Subject Developments for the benefit of **GONZALO DERAMON**, **MICHAEL COX**, **MATTHEW**

14

GREER, and **LLOYD BOGGIO.**

5.      On or about September 28, 2011, **RENE SIERRA** wrote a check to SSHH in the amount of $1,000,000 that included a kickback payment for Labre and other Siltek Subject Developments for the benefit of **GONZALO DERAMON, MICHAEL COX, MATTHEW GREER,** and **LLOYD BOGGIO.**

All in violation of Title 18, United States Code, Section 371.

## COUNT 3
**Conspiracy to Commit Theft of Government Money and Property**
**(18 U.S.C. § 371)**

1.      Paragraphs 1 through 8, 10, 13, and 17 of the General Allegations section of this Superseding Information are realleged and incorporated herein.

2.      From in or around 2009, through in or around 2012, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**GONZALO DERAMON,**

did knowingly and willfully, that is, with the intent to further the purpose of the conspiracy, combine, conspire, confederate, and agree with Arturo Hevia, Michael Cox, and others known and unknown to the United States Attorney, to commit an offense against the United States, that is, to knowingly and willfully embezzle, steal, purloin, and convert to his own use and gain, a thing of value of the United States and of a department and agency thereof, the aggregate amount of which exceeded $1,000.00, that is, Internal Revenue Code Section 42 federal tax credits and United States Department of Treasury grant monies, to which he was not entitled, in violation of Title 18, United States Code, Section 641.

15

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for **GONZALO DERAMON,** Arturo Hevia, Michael Cox, and their co-conspirators to unjustly enrich themselves by submitting fraudulently inflated low-income housing construction contracts to FHFC's representatives to obtain excess federal tax credits and grant monies to which they were not entitled, and then to use the proceeds for their personal use and benefit.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which **GONZALO DERAMON**, Arturo Hevia, Michael Cox, and their co-conspirators sought to accomplish the object of the conspiracy included, among others, the following:

4.      **GONZALO DERAMON** and Michael Cox submitted applications to FHFC for the construction of several low-income housing developments by BHG.  FHFC selected some of these developments, including the DMBC Subject Developments, as eligible for federal tax credits and/or grant monies.

5.      Once selected by FHFC, **GONZALO DERAMON** solicited a final construction bid for the DMBC Subject Developments from Arturo Hevia reflecting the total compensation DMBC would receive to build each DMBC Subject Development.

6.      **GONZALO DERAMON** received a final construction bid from Arturo Hevia for each DMBC Subject Development.  **DERAMON** then provided Hevia with an inflated price to use in the construction contracts for each DMBC Subject Development, which would be submitted to FHFC's representatives.

7.      **GONZALO DERAMON** and Arturo Hevia had an unwritten agreement that

16

DMBC would receive the inflated price listed in the construction contract, but DMBC would keep only its final construction bid amount and kick back the remaining inflated amount of the contract to **DERAMON** and Michael Cox.

8.      **GONZALO DERAMON** and Arturo Hevia signed construction contracts with these fraudulently inflated prices for each DMBC Subject Development and submitted these contracts to FHFC's representatives.  These construction contracts falsely represented the actual amount of compensation that DMBC would receive to build each DMBC Subject Development. FHFC's representatives relied on these fraudulent contracts in determining the amount of federal tax credits and grant monies to recommend that FHFC issue.

9.      FHFC allocated federal tax credits and grant monies for the DMBC Subject Developments based on BHG's submitted costs.   The inflated amounts in the construction contracts caused FHFC to allocate excessive federal tax credits and grant monies for the DMBC Subject Developments.

10.      BHG built the DMBC Subject Developments primarily using federal grant monies and monies from the sale of federal tax credits.  During construction of the developments, BHG distributed monies to DMBC's bank accounts totaling the full amount in the fraudulently-inflated construction contracts.  In this way, **GONZALO DERAMON** made it appear to FHFC and others that the inflated contract price was the actual construction cost for each DMBC Subject Development, when in fact, it was not the true cost.

11.      As funds were deposited in DMBC's bank accounts, Arturo Hevia tracked and retained the excess funds so that Hevia could make periodic kickbacks for the benefit of **GONZALO DERAMON** and Michael Cox.

12.     **GONZALO DERAMON** directed Arturo Hevia to kick back these excess funds to **DERAMON** and Michael Cox by writing checks payable from DMBC to SSHH.  From SSHH, **DERAMON** and Cox caused monies to be distributed to bank accounts and investments for their personal benefit.

13.     In total, as part of this scheme, FHFC allocated at least $1.3 million in excess federal tax credits and grant monies as a result of the inflated contracts for the DMBC Subject Developments.  Arturo Hevia caused over $1 million in kickback payments to be made for the benefit of **GONZALO DERAMON** and Michael Cox.

14.     These kickback payments were in addition to millions of dollars of FHFC-authorized developers' fees that BHG was already receiving as compensation for the DMBC Subject Developments.

## OVERT ACTS

In furtherance of the conspiracy and to achieve the object thereof, at least one of the co-conspirators committed or caused to be committed in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1.     Prior to October 30, 2010, **GONZALO DERAMON** received a final construction bid from Arturo Hevia of approximately $6.64 million to construct Georgia Ayers.

2.     On or about October 30, 2010, **GONZALO DERAMON** and Arturo Hevia signed a fraudulently inflated contract to build Georgia Ayers for approximately $7.54 million.

3.     On or about August 18, 2011, FHFC's representatives recommended an allocation of over $5.4 million in federal tax credits to cover construction costs and other development costs for Georgia Ayers, which included over $1 million in excess tax credits as a result of the

18

fraudulently inflated construction contract.

4.      On or about March 7, 2013, Arturo Hevia wrote a check to SSHH in the amount of $148,231.80 that included a partial kickback payment for Georgia Ayers for the benefit of **GONZALO DERAMON** and Michael Cox.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE
### (18 U.S.C. § 981(a)(1)(C))

1.      The General Allegations Section of this Superseding Information are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which each of the defendants, **MATTHEW GREER**, **LLOYD BOGGIO**, **MICHAEL RUNYAN**, **GONZALO DERAMON**, **MICHAEL COX**, and **RENE SIERRA**, has an interest:

2.      Upon conviction of any conspiracy to commit theft of public money or property, in violation of Title 18, United States Code, Section 371, as alleged in this Superseding Information, each of the defendants shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3.      The property subject to forfeiture includes, but is not limited to, the following with respect to **MATTHEW GREER** and **LLOYD BOGGIO**:

  a.      a joint and several forfeiture money judgment in the amount of $25,181,263.00 in United States currency, which sum represents proceeds traceable to the offenses of conviction;

  b.      approximately $9,221,490.87 in United States currency, seized from Apollo Bank, account number 103001799, in the name of Matthew Greer;

19

c.      approximately $168,870.23 in United States currency, seized from Apollo Bank, account number 101007488, in the name of Matthew Greer;

d.      approximately $600,000.00 in United States currency, from CEF Total Return Opportunity Fund LP, Class A Investment Interest, account number 893489062, in the name of Caesar and Cleopatra Investments LLLP.

e.      approximately $495,109.11 in United States currency, seized from Wells Fargo Bank, account number 2000058126688, in the name of Caesar and Cleopatra Investments LLLP;

f.      approximately $460,526.28 in United States currency, seized from Fidelity Investments, account number 647-492736, in the name of Caesar and Cleopatra Investments LLLP;

g.      approximately $298,590.00 in United States currency, seized from Fidelity Investments, account number 647-497592, in the name of Caesar and Cleopatra Investments LLLP;

h.      approximately $105,720.60 in United States currency, seized from Wells Fargo Bank, account number 1010298389111, in the name of Lisa Boggio Gift Trust, Lloyd J. Boggio, Trustee;

i.      approximately $46,665.37 in United States currency, seized from US Century Bank, account number 2-895-1, in the name of Lloyd Joseph Boggio and Nancy Christine Boggio; and

j.      approximately $11,290.74 in United States currency, seized from Wells Fargo Bank, account number 1010298386237, in the name Lloyd and Nancy Boggio.

4.      The property subject to forfeiture includes, but is not limited to, the following

with respect to **GONZALO DERAMON**:

a.      a forfeiture money judgment in the amount of approximately $4,400,000 in United States currency, which sum represents proceeds traceable to the offenses of conviction;

b.      approximately $61,225.08 in United States currency, seized from

20

BB&T account number 240654741, in the name of BHG Development Group, LLC.; and

c. approximately $2,682.11 in United States currency, seized from Wells Fargo Bank account number 1010087152258, in the name of Gonzalo DeRamon.

5. The property subject to forfeiture includes, but is not limited to, the following with respect to **MICHAEL COX**, a forfeiture money judgment in the amount of approximately $4,400,000 in United States currency, which sum represents proceeds traceable to the offenses of alleged in Count 2 of this Superseding Information.

6. The property subject to forfeiture includes, but is not limited to, the following with respect to **MICHAEL RUNYAN**, a forfeiture money judgment in the amount of approximately $1,147,480.00, which sum represents proceeds traceable to the offense alleged in Count 1 of this Superseding Information.

7. The property subject to forfeiture includes, but is not limited to, the following with respect to **RENE SIERRA**, a forfeiture money judgment in the amount of approximately $1,300,000 in United States currency, which sum represents proceeds traceable to the offense alleged in Count 2 of the Superseding Information.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461(c), and the procedures set forth in Title 21, United States Code, Section 853.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

MICHAEL R. SHERWIN
ASSISTANT U.S. ATTORNEY

MICHAEL N. BERGER
ASSISTANT U.S. ATTORNEY

22

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| UNITED STATES OF AMERICA | **CASE NO.** ___15-20473-CR-UNGARO(s)___ |
| vs. | |
| | **CERTIFICATE OF TRIAL ATTORNEY\*** |
| MATTHEW GREER, LLOYD BOGGIO, MICHAEL RUNYAN, GONZALO DERAMON, MICHAEL COX, and RENE SIERRA, | |
| _____Defendants._____ / | **Superseding Case Information:** |

**Court Division:** (Select One)

| | | |
|---|---|---|
| _X_ Miami | ____ Key West | **New Defendant(s)** Yes _X_ No ____ |
| ____ FTL | ____ WPB ____ FTP | Number of New Defendants _5_ |
| | | Total number of counts _3_ |

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No) ___NO___
   List language and/or dialect _____

4. This case will take _0_ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)

| | | | | (Check only one) | |
|---|---|---|---|---|---|
| I | 0 to 5 days | _X_ | | Petty | _____ |
| II | 6 to 10 days | _____ | | Minor | _____ |
| II | 11 to 20 days | _____ | | Misdem. | _____ |
| IV | 21 to 60 days | _____ | | Felony | _X_ |
| V: | 61 days and over | _____ | | | |

6. Has this case been previously filed in this District Court? (Yes or No) _YES_
   If yes:
   Judge: _____ Case No. _15-20473-CR-UNGARO_
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No) _YES_
   If yes:
   Magistrate Case No. _15-2873-MJ-OTAZO-REYES_
   Related Miscellaneous numbers: _15-20474-CR-UNGARO_
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____ District of _____

   Is this a potential death penalty case? (Yes or No) _No_

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? _____ Yes _X_ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? _____ Yes _X_ No

_____
MICHAEL R. SHERWIN
ASSISTANT UNITED STATES ATTORNEY
Court ID No. A5501230

\*Penalty Sheet(s) attached

REV 4/8/08

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**: <u>**MATTHEW GREER**</u>

**Case No**:  15-20473-CR-UNGARO(s)

Counts #: 1-2

Conspiracy to Commit Theft of Government Money and Property

Title 18, United States Code, Section 371

\* **Max. Penalty**:   Five (5) Years' Imprisonment as to Each Count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: **LLOYD BOGGIO**

**Case No**:  15-20473-CR-UNGARO(s)

Counts #: 1-2

Conspiracy to Commit Theft of Government Money and Property

Title 18, United States Code, Section 371

**Max. Penalty**:   Five (5) Years' Imprisonment as to Each Count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**: **MICHAEL RUNYAN**

**Case No**:  15-20473-CR-UNGARO(s)

Count #: 1

Conspiracy to Commit Theft of Government Money and Property

Title 18, United States Code, Section 371

**\* Max. Penalty**:   Five (5) Years' Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: **GONZALO DERAMON**

**Case No**:  15-20473-CR-UNGARO(s)

Counts #: 2-3

Conspiracy to Commit Theft of Government Money and Property

Title 18, United States Code, Section 371

* **Max. Penalty**:   Five (5) Years' Imprisonment as to Each Count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

Defendant's Name: **MICHAEL COX**

**Case No**:  15-20473-CR-UNGARO(s)

Count #: 2

Conspiracy to Commit Theft of Government Money and Property

Title 18, United States Code, Section 371

**\* Max. Penalty**:   Five (5) Years' Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** **RENE SIERRA**

**Case No:**  15-20473-CR-UNGARO(s)

Count #: 2

Conspiracy to Commit Theft of Government Money and Property

Title 18, United States Code, Section 371

**\* Max. Penalty:**   Five (5) Years' Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

AO 455 (Rev  01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.   15-20473-CR-UNGARO(s) |
| MATTHEW GREER, | ) | |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year.  I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____          _____
*Defendant's signature*


_____
*Signature of defendant's attorney*

**ROY BLACK, ESQ.**
*Printed name of defendant's attorney*


_____
*Judge's signature*


_____
*Judge's printed name and title*

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.   15-20473-CR-UNGARO(s) |
| LLOYD BOGGIO, | ) | |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

**SCOTT SREBNICK, ESQ.**
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.   15-20473-CR-UNGARO(s) |
| MICHAEL RUNYAN, | ) | |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

   I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

   After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.


Date: _____

                                        _____
                                                *Defendant's signature*


                                        _____
                                                *Signature of defendant's attorney*

                                                **BRUCE ROGOW, ESQ.**
                                                *Printed name of defendant's attorney*


                                        _____
                                                *Judge's signature*


                                        _____
                                                *Judge's printed name and title*

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.   15-20473-CR-UNGARO(s) |
| GONZALO DERAMON, | ) | |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

**JOSE QUINON, ESQ.**
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.   15-20473-CR-UNGARO(s) |
| MICHAEL COX, | ) | |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*


_____
*Signature of defendant's attorney*

**BRETT TOLMAN, ESQ.**
*Printed name of defendant's attorney*


_____
*Judge's signature*

_____
*Judge's printed name and title*

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.   15-20473-CR-UNGARO(s) |
| RENE SIERRA, | ) | |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

**WILLIAM BARZEE, ESQ.**
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*